**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

ABRAHAM MALLIK,       *

      Plaintiff,       *

v.       *

           Civil Case No.: PWG-12-1725

KATHLEEN SEBELIUS, SECRETARY,    *
      U.S. DEPARTMENT OF HEALTH
      AND HUMAN SERVICES,       *

      Defendant.       *

      *

*    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

This Memorandum Opinion addresses Plaintiff Abraham Mallik's Motion for Summary Judgment and Memorandum in Support, ECF No. 21; the Opposition that Defendant Kathleen Sebelius, Secretary, U.S. Department of Health and Human Services ("DHHS") filed, ECF No. 27; and Plaintiff's Reply, ECF No. 28; as well as Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 16, and Memorandum in Support, ECF No. 16-1; Plaintiff's Memorandum in Opposition, ECF No. 20; and Defendant's Reply, ECF No. 22. Having reviewed the filings, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part, without prejudice to renewal at the close of discovery, and Plaintiff's Motion is DENIED.

## I. BACKGROUND[1]

Plaintiff, a "South-Asian American . . . of color" who was born in India, is a DHHS employee. Compl. ¶¶ 3–5. He is the "Section Chief, Product Management," for which his "primary task" is "being the Project Officer for the Travel Management Center ('TMC'), which is the Departmental Travel Agency." *Id.* ¶¶ 5 & 11. DHHS hired David Flynn, a Caucasian, in June 2008, at which time he became Plaintiff's supervisor. *Id.* ¶ 13; *see id.* ¶ 39.

Plaintiff claims that Flynn, as soon as he began working as Plaintiff's supervisor, repeatedly discriminated against him based on his race, color, and national origin. Compl. ¶¶ 13 & 53–119. He also alleges that Flynn made racist statements and jokes and treated Plaintiff in such a way as to create a hostile workplace. Compl. ¶¶ 25–52. Further, Plaintiff insists that Flynn acted this way because of Plaintiff's race, color, and national origin. *Id.* Specific instances of purportedly discriminatory and hostile acts are discussed below.

Plaintiff initiated contact with an Equal Employment Opportunity Commission ("EEOC") counselor on September 16, 2010 and filed an EEOC formal complaint with DHHS in October 2010. EEOC Intake Questionnaire & EEOC Formal Complaint, Compl. Exs. A & B, ECF Nos. 1-5 & 1-6. He claims that, after he filed the EEOC complaint, Flynn retaliated against him, as detailed below. Compl. ¶¶ 120–55. When DHHS did not issue a final decision within 180 days of Plaintiff's complaint, Plaintiff sought a hearing before the EEOC. Pl.'s Opp'n 7; Def.'s Mem. 5. Approximately one year later, at which point the EEOC had not issued a final

---

[1] In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the nonmovant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir.2003).

decision, Plaintiff filed suit in this Court, and the EEOC dismissed the action before it. Pl.'s Opp'n 8; Def.'s Mem. 5. His three-count Complaint alleges discrimination based on race, color, or national origin; hostile workplace; and retaliation. Compl. ¶¶ 156–75.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

If the Court considers matters outside the pleadings when reviewing a motion to dismiss, as the Court does here, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013). Summary judgment is proper when the moving

party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff insists that summary judgment in his favor is appropriate "due to Defendant's failure to properly administer Plaintiff's Title VII claims and due to Defendant's failure to complete a proper and timely Report of Investigation ("ROI") mandated by 29 C.F.R. § 1614.108." Pl.'s Mem. 1. Specifically, he contends:

> Defendant: 1) failed to properly administer and process Plaintiff's formal complaint of October 28, 2010 by losing Plaintiff's formal complaint and all related files 2) failed to process Plaintiff's additional claims of May and August 2011 within 30 days as mandated by 29 C.F.R. § 1614.105(d), 3) failed to investigate and complete an impartial ROI within 180 days of filing of the formal complaint as mandated by 29 C.F.R. § 1614.108, and 4) failed to show cause or respond to Plaintiff's motion for sanctions in the EEOC proceeding, or provide any reasonable explanation that would excuse such failure.

*Id.* at 1–2.

According to Plaintiff, if an agency fails to comply timely with 29 C.F.R. § 1614, which governs employment discrimination claims, such as by "fail[ing] to show cause as to why it failed to conduct an investigation within 180 days of the filing of the formal complaint," then "the entry of a default judgment[2] in favor of the complainant is the appropriate remedy." Pl.'s Mem. 8 & 10. Plaintiff does not cite any federal case law – controlling or persuasive – in support of his argument. According to Defendant, Plaintiff's "theory of relief is not supported by any decision from a federal court." Def.'s Mem. 7. Indeed, Plaintiff concedes that "the circumstances presented here are unprecedented in a federal court," while maintaining that "the applicable rule of law is clear and well developed." Pl.'s Reply 2. Plaintiff relies on three EEOC decisions: *Royal v. Dep't of Veterans Affairs*, EEOC Request No. 0520080052, 2009 WL 3163287 (Sep. 25, 2009); *Reading v. Dep't of Veterans Affairs*, EEOC Appeal No. 07A40125, 2006 WL 2992420 (Oct. 12, 2006); *Talahongva-Adams v. Dep't of the Interior*, EEOC Appeal No. 0120081694, 2010 WL 2253800 (May 28, 2010). Pl.'s Mem. 10.

Noting that "Plaintiff's motion for summary judgment is not based on the merits of substantive federal discrimination law, but rather on procedural errors in the handling of his formal complaint by [DHHS]," Defendant argues that "[f]ederal courts … have flatly refused to create an independent cause of action for procedural irregularities in an agency's handling of EEO complaint." Def.'s Opp'n 1 (citing *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990) (citing cases)). Defendant contends that "[a] plaintiff's remedy, 'when he [is] unhappy with the processing of his administrative claim, [is] to file a lawsuit challenging the agency's decision.'" *Id.* at 8 (quoting *Hill v. England*, 2005 WL 3031136, at *3 (E.D. Cal. Nov. 8, 2005) (quotation omitted)). Additionally, in Defendant's view, "Plaintiff's version of the facts regarding

---

[2] Plaintiff clarifies in his Reply that he seeks summary judgment, not a default judgment. Pl.'s Reply 3.

complaint processing by the agency and procedure before the EEOC are both inaccurate and incomplete." *Id.* at 1.

A review of the EEOC decisions that Plaintiff cites is informative. In *Royal*, the EEOC concluded that there was no abuse of discretion in its previous decision to uphold an administrative judge's ("AJ") entry of default judgment against an agency "as a sanction for the agency's failure to complete an investigation within the 180-day period specified at 29 C.F.R. § 1614.108(e)." 2009 WL 3163287, at *1. Likewise, in *Reading*, the EEOC concluded that "the AJ did not abuse her discretion in issuing a [default judgment in favor of] complainant as a sanction against the agency for its dilatory investigation and discovery practices." 2006 WL 2992420, at *2 & 4. Similarly, in *Talahongva-Adams*, when the agency did not submit a complete complaint file in response to the administrative judge's order, and the administrative judge "found that no investigation was ever begun, much less completed, within the 180-day period following the filing of complainant's formal complaint," the EEOC found that "the AJ's decision to sanction the agency [by] issu[ing] a default judgment was proper." 2010 WL 2253800, at *2 & 4. Thus, clearly, precedent exists for an *administrative judge* to issue a default judgment when an agency does not complete its investigation in a timely fashion.

Notably, in these decisions, the EEOC observed that "*[t]he Commission* has the inherent power to protect its administrative process from abuse by either party," *Reading*, 2006 WL 2992420, at *2 (emphasis added), and "*[a]n AJ* has inherent powers to conduct a hearing and to issue appropriate sanctions, including a default judgment," *Royal*, 2009 WL 3163287, at *4 (emphasis added); *see Talahongva-Adams*, 2010 WL 2253800, at *3 (same); *Reading*, 2006 WL 2992420, at *3 (noting that *administrative judges* have "broad discretion in the conduct of a hearing, including such matters as . . . the drawing of adverse inferences and other sanctions").

What is most significant is what these decisions neither state nor imply: They do not state that a *federal district judge* has the power to issue sanctions such as a judgment in an employee's favor, for an agency's failure to comply with EEOC procedures or to prevent abuse of the EEOC's administrative process. Moreover, even if they did so state, EEOC decisions are not binding on this Court, and Plaintiff has not identified any case in which a federal court has granted the relief he requests.

Additionally, the EEOC decisions discuss default judgments, not the summary judgment that Plaintiff seeks. Further, DHHS's alleged failings in administering Plaintiff's claims and untimely completion of its Report of Investigation, though shameful, if true, cannot form the basis for judgment against DHHS, as this Court has noted that an employee "may not file suit against DHHS under Title VII for deficiencies in its EEO complaint process." *Schaff v. Shalala*, Nos. HAR-93-1251 & HAR-93-1993, 1994 WL 395751, at *3 (D. Md. July 14, 1994). Indeed, "Title VII creates only a cause of action for discrimination. It does not create an independent cause of action for the mishandling of an employee's discrimination complaints.'" *Id.* (quoting *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990); *see Olivares v. NASA*, 934 F. Supp. 698, 704 (D. Md. 1996) ("[T]here is no separately recognized cause of action for failure to timely process an EEO complaint."). Consequently, Plaintiff has not shown that he is entitled to judgment as a matter of law, and his Motion for Summary Judgment is DENIED. *See* Fed. R. Civ. P. 56(a).

## IV.    COUNT I – DISCRIMINATION BASED ON RACE, COLOR, NATIONAL ORIGIN

### A.    Exhausting Administrative Remedies By Pleading Claims in EEOC Complaint

To bring a Title VII employment discrimination claim in federal court, a plaintiff must first "exhaust his administrative remedies . . . ." *Van Durr v. Geithner*, No. 12-2137-AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2004)).  To do so, an individual who believes that he has been discriminated against in violation of Title VII must file a timely complaint with the EEOC pursuant to 42 U.S.C. § 2000e-5(e)(1).  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013); *Krpan v. Bd. of Educ. of Howard Cnty.*, No. ELH-12-2789, 2013 WL 4400475, at *5 (D. Md. Aug. 15, 2013).  A plaintiff only exhausts his administrative remedies as to "'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'"  *Vann Durr*, 2013 WL 4087136, at *4 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)); *see Balas*, 711 F.3d at 407 (noting that any claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred" (citations and quotation marks omitted)); *Krpan*, 2013 WL 4400475, at *5–6 (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim in his complaint to the EEOC"); *Bryant*, 288 F.3d at 132– 33 (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination).  Of import, "only the claims raised in *precomplaint counseling* (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency."  29 C.F.R. § 1614.105(b)(1) (emphasis added).

Defendant argues that "Plaintiff could not assert race or national origin as bases for his formal complaint . . . because he had withdrawn those bases of discrimination during the informal counseling stage" and did not "put[] race and national origin at issue before the EEOC Administrative Judge." Def.'s Reply 3. Even though this contention did not surface until Defendant's Reply, I will exercise my discretion to consider it, because "'failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.'" *Krpan*, 2013 WL 4400475, at *5 (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009)). Moreover, even though it was not raised in Defendant's Motion or Memorandum, Plaintiff had the opportunity to respond, and did respond, in the briefings filed with regard to Plaintiff's Motion for Summary Judgment.

Plaintiff's informal complaint originally alleged, *inter alia*, discrimination based on race, color, and national origin. EEOC Formal Compl. 3. According to Plaintiff, his EEO counselor advised him to minimize his claims to increase his chances of settlement, so, on October 21, 2010, Plaintiff sent an email to Michael Chew, Acting Director for the Office of Diversity Management & EEO - Operations, requesting that age, race, and national origin be redacted from the informal complaint. *See* Pl.'s Mem. 5-6; Oct. 21, 2010 Email, Def.'s Mem. Ex. Q, ECF No. 16-19; Mallik Aff. ¶¶ 21-22, Pl.'s Mem. Ex. C, ECF No. 21-3. Plaintiff contends that Chew recommended against the redactions, and therefore Plaintiff requested the same day that race and national origin be included in his formal complaint, on the understanding that second request would "supersede [his] earlier email request." Pl.'s Mem. 6; Mallik Aff. ¶ 23. Although it appears that race and national origin were redacted from Plaintiff's informal complaint, it is evident that these claims were "raised in precomplaint counseling," as they originally were

included in the informal complaint.  *See* 29 C.F.R. § 1614.105(b)(1).  Therefore, these claims can be a part of Plaintiff's EEOC formal complaint.  *See id.*

The formal complaint Plaintiff filed on October 28, 2010 included discrimination based on race, color and national origin.  EEOC Formal Compl. 3; Mallik Aff. ¶ 24; *see* Def.'s Reply 3 (noting that Plaintiff "purported to" include "race or national origin as bases for his formal complaint").  Defendant emphasizes that these bases were not discussed in the narrative portion of the EEOC complaint, Plaintiff did not amend to include these bases, and "the facts alleged now to support discriminatory harassment (as opposed to retaliatory harassment) were not alleged at the agency level, or even at the EEOC hearing stage."  Def.'s Reply 3-5.  Yet, as noted, these bases were part of Plaintiff's formal complaint as initially filed.  Also, Plaintiff had no reason to amend when these bases were listed on his original formal complaint and he believed that his original EEOC complaint remained the operative complaint.  *See* Mallik Aff. ¶¶ 24-31 (stating that Plaintiff believed that his later filings, when he learned that DHHS lost his complaint, were supplements to, not replacements for, his original formal complaint).  Further, one purpose of the EEOC complaint is to put the employer on notice, *see Balas*, 711 F.3d at 407, and checkmarks next to "RACE," "COLOR," and "NATIONAL ORIGIN" certainly put DHHS on notice that Plaintiff alleged discrimination on these bases and afforded DHHS the opportunity to investigate the claims.

Moreover,

an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow." [*Miles v. Dell, Inc.,* 429 F.3d, 480 491 (4th Cir. 2005)]. Instead, so long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). We have therefore found exhaustion where both the administrative complaint and formal litigation concerned "discriminat[ion] in promotions" but involved

different aspects of the "promotional system," *Chisholm v. U.S. Postal Serv.,* 665 F.2d 482, 491 (4th Cir.1981), and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct. *Smith,* 202 F.3d at 248. In doing so, we have sought to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other.

*Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 594 (4th Cir. 2012). Here, the material facts of Plaintiff's suit in this Court, which are discussed in detail *infra*, involve claims of discrimination and harassment by the same actor and reasonably follow from the facts alleged in Plaintiff's EEOC complaint. *See id.* Therefore, Plaintiff has not failed to exhaust his administrative remedies by failing to include relevant claims and facts in his EEOC counseling and complaint. *See id.*; *Balas*, 711 F.3d at 406; *Krpan*, 2013 WL 4400475, at *5; *Vann Durr*, 2013 WL 4087136, at *4.

### B. Exhausting Administrative Remedies by Consulting EEO Counselor

Another requirement for exhausting administrative remedies is that the aggrieved individual "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). This second requirement serves "'to encourage early resolution of discrimination claims on a less contentious and less adversarial basis.'" *Upshaw v. Tenenbaum*, No. PWG-12-3130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) (citation omitted). The deadline for contacting an EEO counselor is "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action," *id.* § 1614.105(a)(1), unless the individual has a reasonable explanation for his delay, in which case the EEOC will extend the deadline, *id.* § 1604.105(a)(2). For example, he could demonstrate that he "was not notified of" or "otherwise aware of" the deadline, that he "did not know and [it] reasonably should not have been known that the discriminatory matter or personnel action occurred," or that he could not contact the counsel

before the deadline due to "circumstances beyond his . . . control" and despite his due diligence or for "other reasons" that the EEOC finds sufficient. *Id.* § 1604.105(a)(2). Significantly, "'[a] district court [generally] must dismiss an employment discrimination claim if the plaintiff fails to seek EEOC counseling within the prescribed time period.'" *Van Durr*, 2013 WL 4087136, at *4 (citation omitted). This is because "[a] prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust all administrative remedies . . . .'" *Upshaw*, 2013 WL 3967942, at *5 (citations omitted).

Plaintiff alleges discriminatory incidents beginning in June 2008 and extending to March 2012, and claims that he filed "a formal complaint" with the EEOC in October 2010. Compl. ¶¶ 23 & 53–155. Defendant does not challenge the timeliness of Plaintiff's EEOC complaint. Rather, she contends that Plaintiff did not initiate contact with an EEO counselor until September 16, 2010, such that "no disparate treatment claim based on discrete acts of discrimination can be maintained by plaintiff for events occurring before August 2, 2010 – the date 45 days prior to September 16, 2010." Def.'s Mem. 8–9. Plaintiff concedes that he "filed his informal EEO complaint on September 16, 2010," Pl.'s Opp'n 6, and then focuses his counterargument on the contents of his October 2010 "formal complaint," *see id.* at 12. Consequently, it is undisputed that Plaintiff's first contact with an EEO counselor was on September 16, 2010. Moreover, Plaintiff does not argue that his deadline for contacting an EEO counselor after any of the earlier alleged incidents should have been extended. *See* 29 C.F.R. § 1604.105(a)(2). In any event, any attempt by Plaintiff to rely on events that occurred prior to August 2, 2010 to support his discrimination claim would be unavailing because "the 'continuing violation' theory, which 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination,' . . . only applies . . . when an employee

asserts a hostile work environment claim." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002))); *see Manyara v. Bowie State Univ.*, No. PWG-12-1837, 2013 WL 781790, at *3 (D. Md. Feb. 28, 2013) (noting that the majority of the events forming the basis for plaintiff's discrimination claim occurred more than 300 days before plaintiff filed her EEOC complaint, such that the complaint was not filed timely with respect to those events; reasoning that the continuing violation theory "'does not apply to discrete discriminatory actions'"; limiting the complaint to the one incident that was not time-barred) (citation omitted).

The following paragraphs of Plaintiff's Complaint describe incidents that allegedly transpired more than forty-five days before Plaintiff contacted an EEO counselor and therefore may not form the basis for Plaintiff's discrimination claim: ¶¶ 53–64, 72–78, 82–93, and 95–96. Additionally, Plaintiff claims that he "was forced to work on days off on July 2, 2010, July 16, 2010, July 30, 2010, and August 13, 2010," but "not compensated for those days of work." Compl. ¶¶ 79–81. Of these four incidents, only the August 13, 2010 occurrence may form the basis for Plaintiff's discrimination claim. I will determine whether Plaintiff has made out a *prima facie* case of employment discrimination under Title VII based on the remaining paragraphs of Plaintiff's Complaint that allege discrimination, i.e., ¶¶ 65–71, 79–81 (with the limitations described above), 94, and 97–119.

### C. Establishing *Prima Facie* Case or Showing Pretext

To establish a *prima facie* case of race, color or national origin discrimination, Plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees

outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)). If Plaintiff makes this showing, "then the burden of production shifts to the employer to proffer a legitimate reason for the alleged discriminatory action." *Id.* (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010)). If Defendants do so, then Plaintiff "must demonstrate that the employer's proffered reasons were merely a pretext for discrimination." *Id.* Summary judgment in the employer's favor is appropriate if Plaintiff fails at either the first or third step, by "fail[ing] either to make a *prima facie* case or to rebut the employer's proffered explanation of its actions." *Id.*

Defendant does not challenge the first, second, or fourth elements of the claim. As for the third element, Defendant only challenges whether one incident – Plaintiff's exclusion from a photograph – constitutes an adverse employment action, Def.'s Mem. 9,[3] apparently conceding that the two other incidents Plaintiff alleges, *see* Compl. ¶¶ 79–81 & 105–19, constitute adverse employment actions. According to Plaintiff, he "was specifically removed and excluded from" a photograph "taken to memorialize the award" that Plaintiff and his supervisor received for DHHS's transit subsidy program. Compl. ¶¶ 97–98. Defendant argues that Plaintiff's "exclusion by David Flynn from a picture taken by JPMC bank . . . is not an adverse employment action under Title VII as it did not affect Plaintiff's employment terms, conditions, or benefits." Def.'s Mem. 9.

---

[3] Curiously, Plaintiff states that "Defendant does not dispute that the first three elements have been satisfied. The challenged issue is whether there are sufficient allegations that support that similarly situated employees received favorable treatment or that Plaintiff received unfavorable treatment because he was of Indian origin." Pl.'s Opp'n 14–15. It is hard to understand how Plaintiff reached this conclusion after reading Defendant's Memorandum, which includes the heading "Alleged exclusion from a picture is not an adverse employment action," and does not include any discussion of less favorable treatment, except with regard to pretext. *See* Def.'s Mem. 9.

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir.) (citations and quotation marks omitted). "Typically, an adverse employment action has been found in cases of 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *Barrett v. Bio-Medical Applications of Maryland, Inc.*, No. ELH-11-2835, 2013 WL 1183363, at *18 (D. Md. March 19, 2013) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). The act need not be an "'ultimate employment decision,'" *James*, 368 F.3d at 375–76 (citation omitted), but the effect must be tangible, *id.* at 377.

The Court is at a loss to see how failure to appear in a photograph could affect Plaintiff's pay, promotion opportunities, or responsibilities on the job, and Plaintiff has not provided any assistance, as he has not alleged that his exclusion from the photograph impacted him in any tangible way. The decision by his supervisor to exclude Plaintiff from the photograph of the award ceremony may have been insensitive, even cruel, but it did not amount to an adverse employment action.

Plaintiff also alleges that he "was forced to work" without compensation on August 13, 2010, one of his days off, Compl. ¶¶ 79–81, and that he was suspended for a week[4] without pay for failing to comply with his supervisor's "unreasonable order" to work on a "previously approved day off," as well as for "Misus[ing] [a] Travel Card" and "not processing payment of invoices" that he claims he never received, *id.* ¶¶ 105, 108 & 112-13. He asserts that his "personnel file reflects this disciplinary suspension," and that the suspension caused his

_____

[4] Plaintiff's suspension was reduced to four days. Amendment, Def.'s Mem. Ex. P, ECF No. 16-18.

employer and colleagues to stigmatize him and left him "unable to obtain any positions that he could transfer to." *Id.* ¶¶ 113 & 117. As noted, Defendant appears to concede that these events, both of which resulted in Plaintiff losing pay, are adverse employment actions. Therefore, Plaintiff has established a *prima facie* case of discrimination based on these two actions.

The burden now shifts to Defendant to show that DHHS had a legitimate, nondiscriminatory reason for these two employment actions. As for making Plaintiff work without compensation on August 13, 2010, Defendant offers no explanation whatsoever. Therefore, summary judgment is not appropriate as to this claim, and it should proceed to trial. *See Linton*, 2011 WL 4549177, at *5.

With regard to suspending Plaintiff without pay, Defendant argues that "Plaintiff's suspension was supported by legitimate, non-discriminatory reasons" and provides documentary evidence setting forth those reasons. Def.'s Mem. 9–10. In a September 17, 2010 Memorandum from Flynn to Plaintiff, Flynn explained that he proposed a seven-day suspension of Plaintiff on three grounds. Def.'s Mem. Ex. I, ECF No. 16-11. First, Plaintiff used his employer-issued credit card ("Travel Card") to pay for removal of a parking boot from his rental car while on business travel, "even though [Plaintiff] understood this to be a clear violation of travel card policy located in the HHS travel manual section 9.2.9 and in [DHHS's] Zero Tolerance memo," as Plaintiff was the "Program Manager of the HHS Travel Card Program." *Id.* at 1–2. Second, Plaintiff failed to meet an assignment deadline, despite Flynn's repeated prompts, and, almost four weeks after the deadline, ignored Flynn's direct order to go to work on a previously-approved day off to complete the assignment before leaving for a two-week vacation. *Id.* at 2–3. Third, Plaintiff failed to process requisitions and invoices in a timely fashion. *Id.* at 3–4. In an October 14, 2010 Decision on Proposed Suspension, Timothy A. Stitely, Director,

Administrative Operations Service, Program Support Center, sustained the charges Flynn made against Plaintiff and affirmed the penalty that Flynn proposed.[5]  Def.'s Mem. Ex. O, ECF No. 16-17.  Additionally, on January 3, 2011, Terry L. Hurst, Deputy Director of the Program Support Center, sustained the charges and supported Plaintiff's suspension.  Def.'s Mem. Ex. T, ECF No. 16-27.  Plaintiff fails to show that these reasons were pretext; indeed, he appears to concede that they were legitimate as he does not address the legitimacy of the reasons for his suspension in his Opposition.[6]  Consequently, summary judgment in Defendant's favor is appropriate as to this discrete claim, although not the entirety of Count I.  *See Linton*, 2011 WL 4549177, at *5.

## V.    COUNT II – PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1).  To be actionable under 42 U.S.C. § 2000e-2(a)(1), discrimination need not be "economic" or "tangible." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted).  Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)

---

[5] As noted, Mr. Stitely amended the Decision on October 19, 2010, suspending Plaintiff for two, 2-day periods without pay, in lieu of one, 7-day period.  Amendment 1.

[6] Although Plaintiff alleges that "Flynn initiated disciplinary suspension against Plaintiff for trivial, unreasonable, and false allegations of employment misconduct," Pl.'s Opp'n 5, and insists that "Flynn was motivated to institute such action due to Plaintiff's color, race, and national origin," *id.* at 9, these conclusory arguments do not amount to a showing of pretext.

(internal brackets and quotation marks omitted)).  A claim for hostile work environment based on race, color, or national origin is actionable under Title VII if the plaintiff shows that "[]he was subjected to harassment in h[is] workplace that was: (1) unwelcome; (2) based on race [or color or national origin]; (3) severe or pervasive; and (4) imputable to the employer." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *11 (D. Md. Sept. 28, 2011); *see EEOC v. Xerxes Corp.*, 639 F.3d 658, 668–69 (4th Cir. 2011); *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at *8 (D. Md. July 18, 2013).

To establish a hostile workplace, Plaintiff claims that Flynn, while working as Plaintiff's supervisor, "stated his racist opinions and views of Indians to Plaintiff."  Compl. ¶ 25. Specifically, Flynn stated that during his frequent trips to Kuwait and Dubai, he "observed thousands of migrant day laborers, mostly from India and Pakistan," who "were subject to disparaging treatment by wealthy Arabs" and "only performed menial tasks." *Id.* ¶ 26.  Flynn allegedly told Plaintiff:

> "[L]et's say there are two lines and one of them was really long with only white people and the other line was much shorter but with only Indians; I would not pick the one with the Indians because the[re] are most likely about three times as many people in that line as the line with the white people, it's just shorter because all the Indians are sticking together because they have no concept of personal space."

*Id.* ¶ 29. Plaintiff asserts that Flynn also said that "Indians have bad personal hygiene and in general smell bad and that was another reason why he didn't want to be in the line with other Indians." *Id.* ¶ 31.

Plaintiff also claims that Flynn made disparaging comments about people of color and non-American national origin, such as by making a joke about Mexicans. *Id.* ¶ 35.  Specifically, Flynn said

> "[T]here were two Mexicans that crossed over the border and snuck in to catch a baseball game in the U.S.; when suddenly one of the Mexicans said 'Oh my God! They are saying your name on the loud speaker! I think they are on to you!' [b]ecause the loud speakers were blaring Oh Say."

*Id.* Flynn had stated that it was a "funny joke about Juan," which was the name of a contractor, and Plaintiff asked him to explain the humor. *Id.* According to Plaintiff, "Mr. Flynn explained that 'Oh Say sounds like 'Jose'"; Plaintiff asked how the joke related to Juan, and "Mr. Flynn waved his hand and said 'Juan – Jose . . . they are the same thing.'" *Id.* Additionally, "in front of the entire travel staff of approximately ten persons," Flynn purportedly said to Adnan Akhtar, an American contractor who was of Pakistani descent: 'You must be in mourning' . . . 'because your leader Bin Laden is dead.'" *Id.* ¶¶ 37–38. Plaintiff claims that "to Mr. Flynn, all people of brown color skin of South Asian origin looked alike and were the same," because Flynn once referred to Akhtar by Plaintiff's name. *Id.* ¶¶ 48–51. Plaintiff adds that, after mistakenly confusing Akhtar with Plaintiff and being "properly corrected, Mr. Flynn intentionally and jokingly continued to incorrectly refer to Mr. Akhtar as Plaintiff." Compl. ¶ 51. Plaintiff also claims that Flynn and other Caucasians threw darts at a picture of President Obama in the office. *Id.* ¶ 130. In Plaintiff's view, Flynn's behavior "established an atmosphere where other Caucasian employees and contractors under the control and supervision of Mr. Flynn made similar comments and jokes about racial minorities and persons of color and of non-American national origin with impunity." *Id.* ¶ 39. Plaintiff further describes comments that Andrew Patton,[7] a contractor, made that Plaintiff found offensive. *Id.* ¶¶ 40–45.

---

[7] Patton allegedly asked why the Government should "waste [his] taxpayer money to save some black person all the way in Africa"; joked that " 'a pizza and a Jew' . . . 'both belong in the oven'"; and said that "Akhtar eats 'smelly food' and 'stinks up the office.'" Compl. ¶¶ 41, 44 & 45.

According to Plaintiff, Flynn once "became extremely enraged against Plaintiff . . . because Plaintiff correctly informed him that federal contractors could not be placed in a position where they would approve or disapprove of federal employees' actions." Compl. ¶¶ 82 & 84. Flynn "violently slapped his computer monitor off the table with his left hand," threw a chair across the room, and "punch[ed] the door frame with both his fists at full force, making them bloody, while screaming at Plaintiff 'get out of my office!' repeatedly." *Id.* ¶¶ 85–87. Additionally, Plaintiff claims that "Mr. Flynn would intentionally withhold basic necessary information pertaining to DHHS employees from Plaintiff such as building relocation plans and a relocation of Plaintiff's office on March 2, 2012." *Id.* ¶ 122. He also alleges that his requests to work from home were denied, and when a contractor of African origin submitted a request to work from home, Flynn denied the request in a humiliating and sarcastic manner, even though he approved similar requests from Caucasian workers. *Id.* ¶¶ 131–35.

Defendant challenges the second and third elements of Plaintiff's claim. Def.'s Mem. 12–18. Regarding whether Plaintiff's supervisor's alleged actions were based on race, color, or national origin, Defendant contends that Flynn did not harbor any discriminatory animus because "Flynn took overt actions in 2009 to support Plaintiff," such as rehiring him and giving him "an 'Exceptional' rating." *Id.* at 15. Defendant puts a different spin on the facts alleged by the Plaintiff. In her view, Flynn's alleged "thoughts and observations on Indians working in the Middle East," which included "comments regarding the personal space and hygiene of Indians observed in India," were "nothing more than travel reminiscences about Mr. Flynn's opportunities to observe Indians during his time in the Middle East," such that they conveyed no discriminatory animus. *Id.* at 12–13. She insists that the comments were "an attempt by a new supervisor to make small talk about a topic in which his subordinate might have an interest," and

that the comments "suggest[] that Flynn felt sympathy for the Indians not the disdain that Plaintiff infers." *Id*. at 13. Defendant characterizes some of Flynn's comments as "poor attempts at humor." *Id*. at 17 (citing Compl. ¶¶ 33–38, 46–52). Defendant does not deny that Flynn threw darts at a portrait of President Obama, but posits that this "was not necessarily based on a discriminatory motive,"—all but conceding that a jury might well find that it was. *Id*. at 17–18. In her view, the comments that Patton made cannot be imputed to Flynn because Plaintiff does not allege that Flynn was present or that Plaintiff reported the comments. *Id*. at 17. Additionally, she argues that "nothing about Plaintiff's account of the allegedly heated April 2010 interview with Mr. Flynn suggests overt racial animus or other discriminatory motive." *Id*. at 15. Plaintiff insists that "[h]ow to interpret Flynn's comments regarding Indians is a material fact in dispute." Pl.'s Opp'n 16. Defendant counters that "no reasonable jury could conclude that the comments about Indians allegedly made by Mr. Flynn were discriminatory in intent . . . ." Def.'s Reply 7.

Plaintiff states that the affidavits of two colleagues, Robert Chang and Veronica Carroll, show that "Flynn would make jokes about Plaintiff and make false comments that Plaintiff was incompetent, was not knowledgeable, and did no work to the other staff." Pl.'s Opp'n 5. This is true: Mr. Chang stated that "Mr. Flynn would make comments/jokes about Mr. Mallik's performance during his absence," Chang Aff. 3, Pl.'s Opp'n Ex. C, ECF No. 20-3, and Ms. Carroll stated that Flynn "was extremely partial to the contractors in the office" and "would make comments to the contractors about Mr. Malik all the time about how incompetent he was and he didn't know his job." Carroll Aff. 3, Pl.'s Opp'n Ex. C. But, neither affiant said that the jokes or comments were *based on* race, color, or national origin, or mentioned the frequency of

the comments. Moreover, Mr. Chang stated that he never "witnessed Mr. Flynn subjecting Mr. Mallik to harassment." Chang Aff. 2.

Thus, on the record currently before me, and absent the taking of any discovery by the parties, only Plaintiff's own assertions support his allegations of hostility based on race, color, or national origin. But, under Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form. *See Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013) ("Importantly, 'the objection [now] contemplated by the amended Rule is not that the material "has not" been submitted in admissible form, but that it "cannot" be.'") (quoting *Ridgell v. Astrue*, No. DKC-10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012)). Certainly, Plaintiff could provide the same statements by affidavit, deposition testimony, or trial testimony. And, provided it is established that he has personal knowledge of the events that he has described in his pleadings and motions papers, and his testimony otherwise complies with the rules of evidence, what he alleges, if believed by the jury, would be evidence of a hostile workplace. While it may prove that, following discovery, Plaintiff's allegations would not be sufficient to withstand summary judgment in the face of the facts demonstrated by Defendant, Plaintiff has made a sufficient showing to allow the case to proceed to discovery regarding this claim.

Nonetheless, the Court may not "transmute . . . ordinary workplace disagreements between individuals of different races into actionable race discrimination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000). Rather, "legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination" because the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races. To

do so would turn the workplace into a litigious cauldron of racial suspicion." *Id.* at 282. Accordingly, Flynn's alleged violent acts in April 2010 and his purported withholding of information cannot be ascribed discriminatory undertones, where there is no evidence that these acts stemmed from discriminatory animus. *See id.* In stark contrast, however, the comments about Indians and Mexicans, as well as the comment about Osama Bin Laden directed at an individual of Pakistani descent, if true, unquestionably are based on race, color, or national origin. It is of no moment that Flynn may have been trying to initiate conversation or make a joke. *See Worldwide Network Servs., LLC v. DynCorp Int'l, LLC*, 365 Fed. App'x 432, 454 (4th Cir. 2010) (stating that "testimony . . . that [DynCorp executives] laughed at racial jokes directed at Worldwide Services" was "some evidence of racial animus").

Even though Plaintiff has identified evidence which, if accepted by the jury, would show that Flynn made comments with discriminatory animus, he also has to identify evidence that would show that Flynn's actions were severe or pervasive. To that end, Plaintiff must demonstrate that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). The hostility must be both objective and subjective; i.e., it must be such that it "would reasonably be perceived [by a reasonable person], and is perceived [by Plaintiff], as hostile or abusive." *Id.* at 22. "Factors going to the severity and pervasiveness of discriminatory harassment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Banhi*, 2013 WL 3788573, at *8 (quoting *Harris*, 510 U.S. at 23); *see Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (same).

This Court recently discussed the "'high bar'" set in *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008), which a plaintiff must clear to establish that the offensive conduct was sufficiently severe and pervasive:

> Intermittent acts of harassment are insufficient to establish that a hostile work environment is severe or pervasive. Indeed, Title VII does not mandate civility in the workplace. Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of [a protected group]."

*Engler v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (internal citations omitted). Notably, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted); *Romeo v. APS Healthcare Bethesda, Inc.*, No. WDQ-11-2208, 2012 WL 1852264, at *9 (D. Md. May 17, 2012) (quoting *Faragher*). Rather, "courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 777 (D. Md. 2010).

Case examples of actionable hostile work environment claims provide insight in the level of severity and pervasiveness required. In *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011), the Fourth Circuit concluded that the plaintiff "present[ed] a strong claim for hostile work environment" where

> she suffered upwards of twelve (12) incidents in just four months: (1) disparaging jokes about gays and lesbians; (2) comments about Okoli and Jacuzzi fantasy; (3) comments about Okoli and group sex fantasy; (4) questions about Okoli's

underwear; (5) comments about sexual relations with another African–American
woman; (6) additional inquiries about Okoli sitting on lap and Jacuzzi fantasy; (7–
10) three incidents of fondling her leg under a table; (11) forcible kissing; (12)
more propositions to join in a Jacuzzi fantasy.

The court noted that "[s]ome of the incidents may have been severe enough to be actionable in and of themselves." *Id.* In *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010), the court concluded that, at the Police Academy where the plaintiff was enrolled, "[t]he work environment was severe or pervasive enough to sustain" plaintiff's claim of hostile work environment based on sex, reasoning that "[s]exist comments were pervasive . . . and were frequently made to Mosby-Grant or in her presence." The court observed that, in less than five months, the plaintiff "heard her fellow recruits brazenly and repeatedly describe a sexual encounter with a sixteen year-old girl" and "heard recruits and instructors make dozens of references to women as 'bitches,' 'crazy,' 'white trash,' 'ghetto,' and 'prostitutes,' was called a 'bitch' herself by an instructor, and was consistently subjected to selective taunting." *Id.* Additionally, the incidents cause the plaintiff "significant emotional distress" and negatively impacted her work performance. *Id.* at 336. In *Hoyle v. Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011), during a five- or six-month period, the plaintiff's coworkers "repeated[ly] display[ed] . . . sexualized photos of women," *id.* at 332, "yelled" at her for complaining about the photos to her supervisor, used a nude picture of a woman as a company computer's screen saver, *id.* at 327, commented about not being able to "see up under [her] pants," and attached a tampon to a key ring, *id.* at 326. Noting that "[t]he question of whether harassment was sufficiently severe or pervasive is 'quintessentially a question of fact,'" the Fourth Circuit reversed the district court's grant of summary judgment for the employer. *Id.* at 333.

Also informative are cases in which claims of hostile work environment failed. In *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996), the plaintiff's supervisor

"bumped into him, positioned a magnifying glass over his crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [the plaintiff's] wedding, and stared at him in the bathroom." Yet, the court noted that the conduct was "temporally diffuse, ambiguous, and often not directed specifically at [the plaintiff]," as "the incidents that Hopkins recount[ed] occurred intermittently over a seven-year period, with gaps between incidents as great as a year," and plaintiff did not claim that his supervisor "ever made an overt sexual proposition or touched Hopkins in a sexual manner." *Id.*; *see id.* at 754 (citing cases in which hostile work environment claims failed "despite evidence that female police officer was subjected to pornographic material placed in her station mailbox and to fellow officers' sexually explicit conversations" and, in another case, "where 'only specific factual allegation of sexual harassment [was] occasional tickling [by plaintiff's male superior] in the hallway'") (citations omitted).

Plaintiff claims that Flynn and a contractor made a series of offensive comments over four years. Compl. ¶¶ 25–51, 130–35. It is far from clear whether Plaintiff's specific allegations rise to the level of actionable harassment that the Fourth Circuit has described. The offensive comments were not "physically threatening or humiliating." *See Banhi*, 2013 WL 3788573, at *8; *Harris*, 510 U.S. at 23; *Tawwaab*, 729 F. Supp. 2d at 777. As noted above, the one physically threatening act Plaintiff alleged is not attributable to racial animus and therefore does not support a hostile work environment claim. *See Harris*, 510 U.S. at 23; *Banhi*, 2013 WL 3788573, at *8; *Tawwaab*, 729 F. Supp. 2d at 777. Additionally, Plaintiff has not claimed that the alleged hostility "'unreasonably interfere[d] with [his] work performance.'" *See Harris*, 510 U.S. at 23; *Banhi*, 2013 WL 3788573, at *8; *Tawwaab*, 729 F. Supp. 2d at 777. Thus,

cumulatively, these "[i]ntermittent acts," even if hostile, are unlikely to create a severely or pervasively hostile work environment. *See Engler*, 2012 WL 3745710, at *5.

Yet, the repeated comments exceed the conduct that the Fourth Circuit has concluded does not constitute actionable harassment. Moreover, as noted, discovery has not begun in this case, and the record is sparse. Although Plaintiff's allegations, if true, may not create a pervasively hostile environment, Plaintiff's Complaint claims that they are indicative of a larger pattern of conduct by Flynn. For example, after Flynn called Akhtar by Plaintiff's name, he "intentionally and jokingly *continued* to incorrectly refer to Mr. Akhtar as Plaintiff." Compl. ¶ 51 (emphasis added). Also, Plaintiff claims generally that "*[d]uring* Mr. Flynn's employment with DHHS and *through the present*, Mr. Flynn openly discriminated against Plaintiff because of his race, color of skin, and national origin with impunity and thereby, created a pervasive and severe environment of hostility for Plaintiff due to his race, color, and national origin," and that "[t]he *series of actions* and discriminatory conduct by Mr. Flynn established a *continuous* hostile environment and on-going harassment against Plaintiff." *Id.* ¶¶ 20 & 22 (emphasis added). Thus, information gleaned during discovery may bolster Plaintiff's claim.

The Court is mindful that the Fourth Circuit has stated repeatedly that "'the question of whether "harassment was sufficiently severe or pervasive is quintessentially a question of fact."'" *Mosby-Grant*, 630 F.3d at 335 (quoting *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir. 1990) (en banc))); *see Hoyle*, 650 F.3d at 333. A jury considering this question, especially if discovery is fruitful for Plaintiff, could find that Plaintiff sufficiently established the pervasiveness of Flynn's conduct to prevail in his claim for hostile workplace. Although Defendant may renew her motion at the conclusion of discovery

and ultimately may prevail, for now, at the pleadings stage, Plaintiff's hostile workplace claim survives.

## VI.     COUNT III – PLAINTIFF'S RETALIATION CLAIM

42 U.S.C. § 2000e-3(a) provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  Although "[t]he plain meaning of the statutory language provides protection of an employee's opposition activity when the employee responds to an actual unlawful employment practice," the Fourth Circuit has "[r]ead[] the language generously to give effect to its purpose" and "held that opposition activity is protected when it responds to an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).  To succeed on a Title VII retaliation claim, "a plaintiff must show that (1) [s]he was engaged in protected activity, (2) the defendant acted adversely against [her], and (3) . . . there was a causal connection between the first two elements." *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at *7 (D. Md. July 18, 2013).

Defendant contends that "insufficient harassment has been alleged to constitute a retaliatory harassment claim."  Def.'s Mem. 18. Additionally, Defendant argues that "the allegations regarding supposed harassing conduct toward others . . . make[] no sense as a basis for retaliation against Plaintiff for his EEOC complaint." *Id*. at 18–19.  Plaintiff responds by identifying the instances of retaliation that he has alleged. Pl.'s Opp'n 18–19.  Specifically, he claims that Flynn retaliated after Plaintiff filed his EEOC complaint by (1) "reject[ing] the reimbursement receipts [Plaintiff submitted] although they were the exact same expenses that

Flynn had approved a year earlier," (2) delaying approval for Plaintiff to register for and attend a convention in 2011, so that Plaintiff had "to scramble last minute to arrange transportation and lodging plans separately and away from the division's attendees," and (3) "chastising, intimidating, and dissuading" two of Plaintiff's colleagues "from even coming to Plaintiff's office." *Id.*

Defendant also challenges causality. Def.'s Mem. 18–19. In Defendant's view, the alleged retaliatory events—which occurred at least four months after October 2010, when Plaintiff filed his EEOC complaint—"are simply too remote to draw a causal inference between the formal complaint and the alleged retaliatory activity." *Id.* at 18. He also argues that "Plaintiff does not allege that there was any overt indication that actions after the formal complaint were taken by Mr. Flynn <u>because of</u> the formal complaint." *Id*. at 19. Defendant cites no supporting authority for her arguments. Plaintiff, citing authority, counters that "Defendant's extreme position of temporal causation has no support in the law." Pl.'s Opp'n 18. Plaintiff filed his Opposition on March 1, 2013. On June 24, 2013, without addressing temporal proximity, the Supreme Court clarified that the causal relationship must be one of "but-for causation," as "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 2533 (2013). This means that the employer would not have taken the adverse employment action against the plaintiff if the employer were not trying to retaliate against the plaintiff for engaging in a protected activity. *See id.*

Plaintiff has not shown that Flynn's alleged adverse actions were taken only for purposes of retaliating against Plaintiff for filing an EEOC complaint. *See id.* Although Plaintiff alleges that "[s]ubsequent to the filing of Plaintiff's formal complaint against Mr. Flynn . . . , Mr. Flynn

retaliated against Plaintiff in additional ways and created a more hostile work environment against Plaintiff," Plaintiff also claims that "Mr. Flynn *continued* to engage in a pattern of discrimination." Compl. ¶ 121 (emphasis added). Thus, Plaintiff alleges that Flynn discriminated against him, as he purportedly had done before Plaintiff filed the complaint. Further, Plaintiff alleges that Flynn discriminated against other employees of color before and after Plaintiff filed the complaint, Compl. ¶¶ 37–38 & 131–35, but he does not allege that the other employees filed complaints such that Flynn's actions could be considered retaliatory as to those employees. Consequently, even taking Plaintiff's allegations as true, after he filed his complaint, he was not treated differently from before he filed it; nor was he treated differently from employees of color who had not filed complaints. He certainly has not shown that retaliation "was the but-for cause" of Flynn's actions. *See Nassar*, 133 S. Ct. at 2528.

Plaintiff cannot make out a *prima facie* case of retaliation. *See id.* Consequently, he has failed to offer evidence to create a "genuine issue as to any material fact," and Defendant is entitled to judgment as a matter of law on Plaintiff's claim for retaliation. *See* Fed. R. Civ. P. 56(a).

## VII.    CONCLUSION

In sum, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is GRANTED in part and DENIED in part, without prejudice to renewal at the close of discovery, and Plaintiff's Motion for Summary Judgment is DENIED. This case shall proceed as to Count I, discrimination based on race, color, or national origin, but only as to Plaintiff's claim that he was required to work on a day off, August 13, 2010, without compensation. This case also shall proceed as to Count II, hostile work environment.

Defendant shall file an Answer no later than September 18, 2013, at which time the Court will enter a Scheduling Order and Discovery Order and schedule a Fed. R. Civ. P. conference call with the parties to discuss further pretrial proceedings.

A separate order shall issue.


Dated: <u>August 28, 2013</u>                                          _____/S/_____
                                                                                        Paul W. Grimm
                                                                                        United States District Judge

lyb